# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

FRED SMITH,       )
                              )
        Plaintiff,      )
                              )
v.                        )        **Case No. CIV-16-1135-HE**
                              )
JAMES DRAWBRIDGE et al.,   )
                              )
        Defendants.    )

## REPORT AND RECOMMENDATION

Plaintiff Fred Smith, a state prisoner appearing pro se, filed this civil rights action alleging violations of federal law.  *See* Compl. (Doc. No. 1) at 1-19.  Chief United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636.

Now before the Court are Plaintiff's Motion for Injunctive Relief (Doc. No. 13), Plaintiff's Petition for Emergency Injunction (Doc. No. 25), and Defendants' Motion to Dismiss (Doc. No. 44).[1]  Defendants have responded to Plaintiff's Motions (Doc. Nos. 40, 41).  Plaintiff did not file a response to Defendants' Motion to Dismiss within the allotted time or thereafter.  For the reasons set forth below, the undersigned recommends that Defendants' Motion to Dismiss be granted in part and denied in part and that Plaintiff's Motion for Injunctive Relief and Petition for Emergency Injunction be denied.

---

[1] Plaintiff's Motions were filed while he was incarcerated at James Crabtree Correctional Center in Helena, Oklahoma.  *See* Pl.'s Mot. at 1; Pl.'s Pet. at 4.  He is currently housed at Joseph Harp Correctional Center in Lexington, Oklahoma.  *See* Docket, Staff Note of June 21, 2017.

## PLAINTIFF'S CLAIMS AND RELIEF SOUGHT

During the relevant time period, Plaintiff was incarcerated at James Crabtree Correctional Facility ("JCCC"). *See* Compl. at 6.[2] In his Complaint, Plaintiff asserts claims against the Oklahoma Department of Corrections ("ODOC") and ten individual Defendants who are or were employed by ODOC.[3] *See id.* at 3-5. Plaintiff brings claims against the individuals in both their individual and official capacities. *See id.* Plaintiff seeks compensatory and punitive damages, as well as declaratory and prospective injunctive relief. *Id.* at 3.

Plaintiff's claims arise from events alleged to have occurred while he was housed at JCCC. *See id.* at 6. Though his Complaint is captioned with five "Grounds," Plaintiff actually brings seven separate claims. As his first and second claims, Plaintiff contends that Defendants Drawbridge, Reed, Curry, Bryant, Knutson, and ODOC violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")[4] and the First Amendment's Free Exercise clause by denying "Plaintiff his right to the free exercise of his orthodox Jewish religion and/or substantially burden[ing] this right" (the

---

[2] Citations to documents filed in this Court use the page numbers assigned by the Court's electronic filing system.

[3] Defendant Drawbridge, JCCC Chaplain; Defendant Bryant, JCCC Warden; Defendant Knutson, ODOC Administrative Review Authority; Defendant Schmidt, JCCC Shift Lieutenant; Defendant Shelite, JCCC Correctional Officer; Defendant Steinwand, JCCC Correctional Officer; Defendant Bredel, JCCC Business Officer; Defendant Curry, JCCC Food Service Supervisor; Defendant Reed, JCCC Commissary Supervisor; and Defendant Arias-Vales, JCCC Mailroom Supervisor.

[4] 42 U.S.C. §§ 2000cc to 2000cc-5.

"RLUIPA Claim" and "Free Exercise Claim," respectively). *Id.* at 6. Plaintiff asserts that Defendants denied him "a diet consistent with his . . . religious scruples"; failed to accommodate his requests for religious services; failed to accommodate his requests for religious events; denied his request to possess and wear a Katan; and denied his request to have a nonwool blanket. *Id.* at 6-11 (internal quotation marks omitted).

As his third claim, Plaintiff asserts that Defendants Schmidt, Curry, and ODOC violated Title II of the Americans with Disabilities Act ("ADA")[5] by failing to accommodate his disability (the "ADA Claim"). *See* Compl. at 10, 21-22; *see also id.* at 1, 6. In his fourth claim, Plaintiff asserts that Defendants Schmidt, Shelite, Steinwand, Drawbridge, Bredel, and Bryant retaliated against Plaintiff when Plaintiff filed grievances and a civil rights lawsuit related to his religious beliefs and his attempts to practice his religion (the "Retaliation Claim"). *See id.* at 12-13.

Fifth, Plaintiff claims that, in denying him the ability to "properly exercise his sincerely held religious beliefs," Defendants Bryant, Schmidt, Shelite, and Steinwand violated his rights under the Eighth Amendment by intentionally inflicting "emotional distress and mental pain, resulting in severe headaches, anger and depression" (the "Eighth Amendment Claim"). *Id.* at 13-14.

As his sixth claim, Plaintiff asserts that Defendants Bryant, Bredel, Arias-Vales, and ODOC "denied him due process and impeded his access to the courts by not allowing him to pay costs of copies and postage required to file and serve this civil action from his inmate

---

[5] 42 U.S.C. §§ 12131-12134.

mandatory savings account pursuant to an illegal prison policy" (the "Access to Courts Claim"). *Id.* at 15-16. In his seventh and final claim, Plaintiff asserts that Defendants Bryant and ODOC violated Plaintiff's rights to due process under the Fourteenth Amendment by "obstructing and abusing the [ODOC] grievance policy" (the "Due Process Claim"). *Id.* at 17-19.

## ANALYSIS

I. *Certain of Plaintiff's 42 U.S.C. § 1983 and RLUIPA Claims Are Barred by Eleventh Amendment Immunity*

Citing the Eleventh Amendment to the U.S. Constitution, Defendants seek dismissal of Plaintiff's RLUIPA and § 1983 claims against ODOC, as well as Plaintiff's RLUIPA and § 1983 claims against the individual Defendants to the extent Plaintiff seeks money damages from them in their official capacities. *See* Defs.' Mot. to Dismiss at 9-10; Fed. R. Civ. P. 12(b)(1). The Court therefore is obligated to address whether Defendants enjoy immunity from suit. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity "can be waived" but "constitutes a bar to the exercise of federal subject matter jurisdiction" when effectively asserted).

"Oklahoma has not consented to be sued in federal court." *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012); *accord Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983 or RLUIPA. *See Quern v. Jordan*, 440 U.S. 332, 342-45 (1979) (§ 1983); *Sossamon v. Texas*, 563 U.S. 277, 290-91, 293 (2011) (RLUIPA). Thus, the State of

Oklahoma's Eleventh Amendment immunity from § 1983 and RLUIPA claims in federal court remains intact.[6]

This immunity extends beyond states to state agencies. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). State agencies entitled to assert Eleventh Amendment immunity are those considered "arm[s] of the state." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). An entity's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted).

Here, the relevant state agency is ODOC, which, in addition to being named as a Defendant, was the employer of the individual Defendants during the events giving rise to this lawsuit. *See* Compl. at 3-5. ODOC is considered an arm of the State of Oklahoma.

---

[6] Defendants refer to the ADA alongside their assertion of Eleventh Amendment immunity for the § 1983 and RLUIPA Claims, stating that "Congress did not abrogate state immunity through the enactment of 42 U.S.C. § 1983, 42 U.S.C. § 2000 [RLUIPA], or 42 U.S.C. § 12101 [ADA]." Defs.' Mot. to Dismiss at 9. However, Defendants fail to note the extant authority supporting the proposition that Title II does abrogate state immunity. The Supreme Court has held that, because Title II of the ADA incorporates by reference section 505 of the Rehabilitation Act, codified at 29 U.S.C. § 794a, "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 546 U.S. 151, 154 (2006). Further, the ADA provides, "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202; *see also Georgia*, 546 U.S. at 152-59 (discussing a state's sovereign immunity under Title II of the ADA); *Ray v. Dep't of Corr.*, CIV-14-735-C, 2016 WL 1212773, at *7-8 (W.D. Okla. Mar. 2, 2016) (R&R), *adopted*, 2016 WL 1228664 (W.D. Okla. Mar. 28, 2016). At this juncture, Defendants have not shown that they are immune from Plaintiff's ADA Claim.

*Berry*, 495 F. App'x at 922 ("ODOC is . . . shielded by sovereign immunity because it is an arm of the state." (citing *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988))).  Thus, ODOC is protected from suit in federal court by Eleventh Amendment immunity.

The individual Defendants are also partially protected by Eleventh Amendment immunity.  "[I]t is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'"  *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)).  ODOC's immunity extends to claims against its employees who are sued in their official capacities for damages.  *See Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("The [Eleventh Amendment] immunity applies not only to suits against states, but also to damage suits brought against state officials in their official capacities."); *see also Eastwood*, 846 F.2d at 632.  The individual Defendants, as employees of ODOC in their official capacities, therefore are protected by Eleventh Amendment immunity from Plaintiff's § 1983 and RLUIPA damages claims.

Accordingly, to the extent Plaintiff is suing ODOC and is suing the individual Defendants in their official capacities for monetary damages, Plaintiff's claims under § 1983 and RLUIPA are barred by the Eleventh Amendment and should be dismissed.

## II. Plaintiff's Official-Capacity Claims Against the Individual Defendants Should Be Dismissed

In his Complaint, Plaintiff purports to sue all individual Defendants in both their official and individual capacities. *See* Compl. at 3-5. Plaintiff may bring an official-capacity suit against a named state official if his Complaint "alleges an ongoing violation of federal law and . . . seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (first citing *Ex parte Young*, 209 U.S. 123 (1908); then citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Although Plaintiff alleged that violations of federal law were ongoing at JCCC when his Complaint was filed in September 2016, he has since been transferred several times and is now housed at JHCC. *See supra* note 1. With respect to the ten Defendants who are identified as JCCC employees, Plaintiff's request to enjoin officials' conduct toward him at that facility "was undoubtedly mooted by his transfer" to another facility. *Stephens v. Jones*, 494 F. App'x 906, 910 (10th Cir. 2012). "A preliminary injunction directed at [JCCC] prison officials would not . . . provide[] any 'conclusive relief' because [Plaintiff] [is] no longer housed there." *Id.* (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)); *see also Jordan*, 654 F.3d at 1027-29; *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010); *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975).

With respect to Defendant Knutson (the only named ODOC official), he is alleged to serve as the ODOC Administrative Review Authority, whose job duties lie only in processing of inmate grievance appeals. *See* Compl. at 10, 20; *see also* Defs.' Mot. to Dismiss at 12-13. Plaintiff alleges no facts suggesting that Defendant Knutson has any

policymaking authority for ODOC or would have the ability to modify any ODOC policies pursuant to any judgment entered in Plaintiff's favor. *See* Compl. at 10, 20; *Abdulhaseeb*, 600 F.3d at 1312.

Further, although Plaintiff characterizes his request for declaratory relief as "prospective," any claim for declaratory relief against Defendants in their official capacities, based on claims arising at JCCC and "'related solely to past violations of federal law,'" would be retrospective in nature and therefore "barred by the Eleventh Amendment." *McCrary v. Jones*, No. CIV-13-573-M, 2015 WL 873641, at *4 (W.D. Okla. Feb. 27, 2015) (quoting *Green v. Mansour*, 474 U.S. 64, 67 (1985)); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004); *see also Winsness v. Yocom*, 433 F.3d 727, 735 (10th Cir. 2006) ("[W]e treat declaratory relief as retrospective . . . to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred." (internal quotation marks omitted)).

Accordingly, Plaintiff's official-capacity claims for declaratory and injunctive relief against all ten individual Defendants should be dismissed.

III. *Certain of Plaintiff's Remaining Claims Should Be Dismissed for Failure to State a Claim upon Which Relief May Be Granted*

While the Court construes a pro se litigant's pleadings liberally, all parties must adhere to applicable procedural rules. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court reviewing the sufficiency of a complaint "will not supply additional factual allegations to round out

a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

Defendants move to dismiss certain of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In analyzing a motion to dismiss under this Rule, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief can be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991); *see also Whitney*, 113 F.3d at 1173-74. Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

A. <u>The Individual-Capacity RLUIPA Claims and the Individual-Capacity Free Exercise Claims</u>

    *1.  The RLUIPA Claim*

RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015); *see* 42 U.S.C. § 2000cc-1(a); *Abdulhaseeb*, 600 F.3d at 1312-13.

Defendants argue that Plaintiff's RLUIPA Claim is subject to dismissal because the statute does not permit claims against individual defendants in their individual capacities. *See* Defs.' Mot. to Dismiss at 16. The undersigned agrees, as "there is no cause of action under RLUIPA for individual-capacity claims," *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012). "RLUIPA is limited to official capacity claims for equitable relief," *Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015), and, as discussed above, Plaintiff's official-capacity RLUIPA claims are subject to dismissal on another ground. Accordingly, Plaintiff's RLUIPA Claim should be dismissed in its entirety.

    *2.  The Free Exercise Claim*

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). Plaintiff asserts that Defendants Drawbridge, Bryant, Knutson, Curry, and Reed violated his right under the First Amendment to freely exercise his religious beliefs.

"In order to state a constitutional violation based on a free-exercise claim, a prisoner must allege that defendants 'substantially burdened his sincerely-held religious beliefs.'" *McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. 2012) (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)). "And he 'must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.'" *Id.* (quoting *Gallagher*, 587 F.3d at 1070); *see also Kay*, 500 F.3d at 1218. If the prisoner-plaintiff satisfies this initial step, "prison officials-defendants may identify the legitimate penological interests that justified the impinging conduct." *Kay*, 500 F.3d at 1218 (alterations and internal quotation marks omitted); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Beerheide v. Suthers*, 286 F.3d 1179, 1184-85 (10th Cir. 2002). The court then balances the factors set forth by the Supreme Court in *Turner v. Safley* "to determine the reasonableness of the regulation." *Kay*, 500 F.3d at 1219.[7]

To justify dismissal of the Free Exercise Claim, Defendants address each of the four *Turner* factors and argue that application of these factors weighs in their favor and establishes the reasonableness of the disputed prison regulations. *See* Defs.' Mot. to Dismiss at 20-23. This approach is misguided: when considering a motion to dismiss, a

---

[7] These factors are:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Kay*, 500 F.3d at 1219 (internal quotation marks omitted).

court does not engage in a full analysis of the *Turner* factors. *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (noting that while a complaint must "address *Turner*'s core holding, the four *Turner* factors need not be a part of the analysis at the pleading stage"). At this stage, contrary to Defendants' position, Plaintiff is "not required to substantively rebut the government's justifications" or to "identify every potential legitimate interest and plead against it." *Al-Owhali*, 687 F.3d at 1240, 1241 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) ("[W]e do not intend that pro se prisoners must plead, exhaustively, in the negative in order to state a claim.")). Plaintiff's Free Exercise Claim should not be dismissed on this basis.

Defendants additionally argue that Plaintiff has not adequately pled personal involvement by Defendant Bryant or Defendant Knutson in the relevant constitutional violation, and therefore the individual-capacity claims against those Defendants should be dismissed. *See* Defs.' Mot. to Dismiss at 11-13. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher*, 587 F.3d at 1069 (internal quotation marks omitted). When a defendant is sued in his or her individual capacity under § 1983, the plaintiff must show specific elements as to each defendant. First, the plaintiff must establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *Iqbal*, 556 U.S. at 676. Second, the plaintiff must establish a

causal connection between the acts of that particular defendant and the violation of a federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). Finally, the plaintiff must establish that the defendant acted with the state of mind required for the underlying federal rights violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

Here, Plaintiff alleges Defendants Bryant and Knutson "allowed" the violation of Plaintiff's free exercise rights "to continue by denying relief for Plaintiff's multiple grievances." Compl. at 10; *see also id.* at 19-20. But "[d]enial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation for purposes of a Section 1983 claim." *Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013) (citing *Gallagher*, 587 F.3d at 1069); *accord Stewart*, 701 F.3d at 1328. Moreover, "[s]upervisory status alone does not create § 1983 liability. Rather, there must be an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Gallagher*, 587 F.3d at 1069 (alterations and internal quotation marks omitted); *accord Stewart*, 701 F.3d at 1328 ("Whatever knowledge [the warden] may have had when he denied the appeal, his only involvement was to deny the grievance appeal, which is insufficient for § 1983 liability."). Accordingly, Plaintiff has not adequately alleged any factual basis to establish these individuals' personal participation in the underlying constitutional violation. The Free Exercise Claim against Defendant Bryant and Defendant Knutson in their individual capacities should be dismissed.

B. The ADA Claim

Aside from their unsupported reference to Eleventh Amendment immunity, Defendants do not seek dismissal of Plaintiff's ADA Claim, which is alleged against Defendants Schmidt, Curry, and ODOC. *See* Defs.' Mot. to Dismiss at 9; discussion *supra*.

Despite Defendants' failure to address this claim, the undersigned recommends dismissal in part pursuant to the Court's screening obligation under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1). Pursuant to these statutes, the court shall dismiss any portion of a complaint that fails to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915(A)(b)(1); 42 U.S.C. § 1997e(c)(1); *McKinney v. State of Okla., Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991); *see also Kay*, 500 F.3d at 1217.

Title II of the ADA prohibits a "qualified individual with a disability" from being discriminated against, and from being "excluded from participation in" or "denied the benefits of . . . services, programs, or activities," by "a public entity" on the basis of such disability. 42 U.S.C. § 12132. State prison inmates such as Plaintiff can be "qualified individual[s]" within the meaning of Title II. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209, 213 (1998). And a state prison "fall[s] squarely within the statutory definition of 'public entity'" in 42 U.S.C. § 12131(1). *Id.* at 210; *see* 42 U.S.C. § 12131(1) (defining "public entity" to include state and local governments and those governments' departments, agencies, and instrumentalities); *Phillips v. Tiona*, 508 F. App'x 737, 749 (10th Cir. 2013).

The statutory definition of "public entity" does not expressly extend to individual persons, however. *See* 42 U.S.C. § 12131(1). Therefore, "most courts have held that Title II claims cannot be maintained against individual defendants." *Lewis v. N.M. Dep't of Health*, 94 F. Supp. 2d 1217, 1230 (D.N.M. 2000) (citing cases), *aff'd*, 261 F.3d 970 (10th Cir. 2001). Those specifically endorsing this view include the Second, Sixth, and Eighth Circuits, as well as district courts within the Tenth Circuit. *See, e.g.*, *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009); *Green v. City of N.Y.*, 465 F.3d 65, 76 (2d Cir. 2006); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc); *Montez v. Romer*, 32 F. Supp. 2d 1235, 1241 (D. Colo. 1999).

The undersigned has not found any published Tenth Circuit decision directly addressing this point. The Tenth Circuit has held, however, that Title I of the ADA, which prohibits discrimination by employers and their agents, "precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition." *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999) (citing 42 U.S.C. §§ 12111, 12112). This Court has extended *Butler* to hold, in accordance with the majority view, that a Title II claim could not be brought against a defendant in his or her individual capacity. *See, e.g.*, *Malipurathu v. Jones*, No. CIV-11-646-W, 2012 WL 3822206, at *9 (W.D. Okla. June 14, 2012) (R. & R.), *adopted in relevant part*, 2012 WL 3835523, at *2 (W.D. Okla. Sept. 4, 2012), *and aff'd*, 563 F. App'x 646 (10th Cir. 2014); *Ray v. Dep't of Corr.*, No. CIV-14-735-C, 2016 WL 1212773, at *3-4 (W.D. Okla. Mar. 2, 2016) (R. & R.), *adopted*, 2016 WL 1228664 (W.D. Okla. Mar. 28, 2016).

While the undersigned notes one unpublished, nonprecedential Tenth Circuit decision to the contrary, *see Meyers v. Colo. Dep't of Human Servs.*, 62 F. App'x 831, 832 (10th Cir. 2003), that disposition appears to be an outlier and is not persuasive in light of the express statutory definition of "public entity" and the weight of authority from numerous jurisdictions holding that "Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson*, 556 F.3d at 501 n.7. Plaintiff's claim for violation of Title II of the ADA against Defendants Schmidt and Curry in their individual capacities should be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1) for failure to state a claim upon which relief can be granted.

C. <u>The Eighth Amendment Claim</u>

Plaintiff alleges that, in denying him the ability to "properly exercise his sincerely held religious beliefs," Defendants Bryant, Schmidt, Shelite, and Steinwand violated his rights under the Eighth Amendment by intentionally inflicting "emotional distress and mental pain, resulting in severe headaches, anger and depression." Compl. at 13-14. Plaintiff additionally alleges that he has been "pick[ed] on" by these Defendants and has suffered distress caused by "[s]eeing his Jewish friends being transferred out of obvious retaliation [and] [k]nowing that he has now been targeted for aggressive retaliation and imminent transfer." *See id.* at 12-13, 14.

Although intentional infliction of emotional distress may support liability in tort, the fact that these Defendants' alleged violations of Plaintiff's federal rights have caused him distress and headaches does not plausibly reflect that the Defendants' actions

independently amounted to a separate constitutional violation. The Eighth Amendment requires prison officials to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see* U.S. Const. amend. VIII; *see also Estelle v. Gamble*, 429 U.S. 97, 102-06 (1976). As explained by the Tenth Circuit:

> Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety. *See Farmer*[, 511 U.S. at 832-33.] . . . .

> In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. First, the deprivation alleged must be objectively "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), depriving the inmate of "'the minimal civilized measure of life's necessities,'" *id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must exhibit "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297.

*Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citations omitted).

Plaintiff's vague allegation that he suffered "mental pain"[8] does not plausibly support a showing that he has been deprived of "the minimal civilized measure of life's necessities" or a "human need," or otherwise subjected to a deprivation that is "sufficiently serious" to constitute cruel and unusual punishment in violation of the Eighth Amendment. Compl. at 13; *Wilson*, 501 U.S. at 298, 304; *see McBride v. Deer*, 240 F.3d 1287, 1291 n.3

---

[8] Although Plaintiff also alleges that he "has had two strokes," there are no factual allegations linking these strokes to any conduct or personal involvement of these Defendants. Compl. at 14. Nor are there any allegations linking these strokes to any well-pleaded substantive constitutional violations, such that Plaintiff could plausibly overcome the Prison Litigation Reform Act's bar on emotional-injury compensatory damages. *See Escobar v. Zavaras*, No. 97-1303, 1998 WL 314303, at *3 (10th Cir. June 2, 1998); 42 U.S.C. § 1997e(e).

(10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Joseph v. U.S. Fed. Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *2 (10th Cir. Oct. 16, 2000) (finding that a claim that unwanted touching caused emotional distress was insufficient to implicate the Eighth Amendment); *cf. LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) (affirming dismissal of Eighth Amendment claim where prisoner was denied religious diet but received nutritionally adequate food). This claim should be dismissed in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

### D. The Access to Courts Claim

The Constitution guarantees state prisoners the right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Plaintiff claims that Defendants Bredel, Arias-Vales, and Bryant impeded his access to courts by not allowing him to pay for costs out of his inmate mandatory savings account ("IMSA"). Compl. at 15-16. Plaintiff alleges that Defendant Bredel denied Plaintiff permission to use IMSA funds to pay for the cost of photocopying the instant Complaint and exhibits; and that Defendant Arias-Vales denied him permission to use IMSA funds to pay postage for mailing this pleading. He further alleges that ODOC Policy OP-120230(I)(B)(2)(d)(1), which permits IMSA funds to be used only "to pay the filing fee for court actions," violates title 57, section 549(A)(5) of the Oklahoma Statutes, which prescribes that inmates may use IMSA funds "to pay fees *or costs* associated with filing in court." Compl. at 15, 16.

He contends that Defendants Bredel and Bryant were aware of this conflict and refused to follow state law. *Id.* at 16.

Defendants argue that the claim should be dismissed for failure to state a claim because Plaintiff is "unable to establish an actual injury." Defs.' Mot. to Dismiss at 13-15. As the Tenth Circuit has recognized, "conduct that unduly hinders litigation at any stage of the proceedings" can be actionable on a prisoner's denial-of-access claim. *Vreeland v. Schwartz*, 613 F. App'x 679, 683 (10th Cir. 2015) (citing *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010)). But a necessary prerequisite to such a claim is that the prisoner have suffered an actual injury—"that is, that the defendant's actions hindered the prisoner's ability to proceed with an actual, nonfrivolous claim." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996)). Here, Plaintiff has not alleged facts plausibly showing that he was "frustrated or impeded in his efforts to pursue a nonfrivolous legal claim." *Gee*, 627 F.3d at 1191. While Plaintiff alleges that he was not permitted to use his IMSA funds to pay court-related costs in this lawsuit, he acknowledges that he was able to use his "spendable 'draw' account" to pay the costs and successfully file his Complaint and exhibits. *See* Compl. at 15. Though Plaintiff may have been inconvenienced by having to use his spending money to pay costs, his access to courts was not actually impeded, and Plaintiff's allegations in support of his access to courts claim therefore fail to state a plausible claim for § 1983 relief. *See McBride*, 240 F.3d at 1290; *Gee*, 627 F.3d at 1191. As such, the access to courts claim should be dismissed in its entirety pursuant to Rule 12(b)(6).

E.  The Due Process Claim

Plaintiff alleges that Defendant Bryant violated his due process rights by "abusing and violating" "an overly complex, confusing and difficult grievance policy."  Compl. at 17-18.

Because "[i]nmates do not have a protected liberty interest in pursuing formal grievance procedures," Plaintiff's allegations that the grievance procedure was too complex and that proper grievance procedures were not adhered to cannot state a claim against Defendant Bryant upon which relief plausibly can be granted under § 1983.  *Spry v. McKune*, 479 F. App'x 180, 181 (10th Cir. 2012); *accord Pemberton v. Jones*, No. CIV-10-966-D, 2011 WL 1598194, at *3 (W.D. Okla. Apr. 27, 2011).  As recognized by the Tenth Circuit, "when the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."  *Boyd v. Werholtz,* 443 F. App'x 331, 332 (10th Cir. 2011) (alteration and internal quotation marks omitted); *see also Brewer v. Gilroy*, 625 F. App'x 827, 838 (10th Cir. 2015) (holding that the plaintiff had "no independent due process rights" arising from prison employees' disposition of internal grievances).

Plaintiff's due process claim, therefore, fails to allege a violation of the Fourteenth Amendment upon which relief can be granted and should be dismissed.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

## F.  The Retaliation Claim

Prison officials may not retaliate against an inmate on account of, or otherwise harass an inmate in retaliation for, the inmate's exercise of his constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948.

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *accord Gee*, 627 F.3d at 1189.

In reviewing a prisoner's claim of retaliation, however, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Turner*, 482 U.S. 78). Thus, to prevail on a retaliation claim, a prisoner must ultimately show that the challenged actions would not have occurred "but for" a retaliatory motive. *Id.*; *see also Brown v. Wyo. Dep't of Corr. State Penitentiary Warden*, 234 F. App'x 874, 877-78 (10th Cir. 2007) ("[A] prisoner claiming retaliation must allege specific facts showing retaliation [on account] of the exercise of the prisoner's constitutional rights, and he must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." (second alteration in original) (citation and internal quotation marks omitted)).

Plaintiff alleges that on June 15, 2016, he filed a separate lawsuit in this Court alleging violations of his civil rights, and Defendants Schmidt, Shelite, Steinwand, Drawbridge, Bredel, and Bryant retaliated against him for filing that lawsuit. *See* Compl. at 8, 12, 13; *Smith v. Okla. Dep't of Corr.*, No. CIV-16-654-HE (W.D. Okla.). Specifically, Plaintiff alleges that in June of 2016, Defendants Shelite and Steinwand carried out a search of Plaintiff's cell, seized noncontraband items, and "yelled and screamed at" Plaintiff. Compl. at 8, 12, 13; *see also id*. at 20. Plaintiff also alleges that Defendant Drawbridge "ordered the cell search and intimidation tactics." *Id*. at 8, 12. Plaintiff alleges that Defendant Drawbridge further retaliated against him in July of 2016 for exercising his rights to practice his religion and to file grievances by failing to alert Food Services that Plaintiff should receive a hot meal after the Fast of Tammuz. *Id*. at 10, 12. Plaintiff alleges that in July of 2016, Defendant Schmidt threatened him with disciplinary action when Plaintiff exited the chow hall with food on his person. *Id*. at 12-13, 20. Plaintiff alleges that Defendant Bredel "intentionally refused to pay the $400 filing fee" for Plaintiff's other lawsuit "until over three (3) weeks had gone by," "intend[ing] to cause the . . . case to be dismissed for nonpayment of the filing fee." *Id*. at 20; *see also id.* at 12.

Defendants seek dismissal of this Claim as to Defendant Bryant based upon Defendant Bryant's lack of any personal participation in the allegedly unconstitutional conduct. *See* Defs.' Mot. to Dismiss at 11-12. Plaintiff's allegations against Defendant Bryant relate mainly to that Defendant's denial of Plaintiff's grievances. *See* Compl. at 12. For example, Plaintiff conclusorily alleges that Defendant Bryant was "made aware" of Defendant Bredel's alleged interference in Plaintiff filing and paying the costs of the

earlier-filed lawsuit but took no corrective action. *See id.*; *see also id.* at 19-20. As set forth above, however, neither a denial of a grievance nor mere supervisory status establishes personal participation under § 1983. *Gallagher*, 587 F.3d at 1069; *Stewart*, 701 F.3d at 1328; *see* discussion *supra*. Plaintiff also alleges that Defendant Bryant transferred "other Jewish inmates who complained about being wrongfully taken off of a Kosher diet" and "Plaintiff has been threatened with being transferred as well." Compl. at 13. But Plaintiff cannot bring a claim based on actions taken against other inmates and does not identify Defendant Bryant as the individual who threatened him personally. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("[The plaintiff] lacks standing to bring claims on behalf of others."). Accordingly, Plaintiff has not adequately alleged any factual basis to establish personal participation by Defendant Bryant in the alleged retaliatory acts, and the Retaliation Claim should be dismissed as to this Defendant.

Nor has Plaintiff plausibly alleged a retaliation claim against the other five Defendants. As to all the relevant Defendants, Plaintiff's "attribution of contributory motive" "is conjectural and conclusory" and fails to show that "but for" an improper motive these actions would not have been taken. *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010). "While [Plaintiff] undeniably engaged in protected activity," "that alone does not establish the requisite causal connection for his retaliation claim." *Id.*

Plaintiff offers no facts to show that Defendants Schmidt, Shelite, Drawbridge, or Steinwand even knew about the other lawsuit in June-July 2016 or at any time before the

instant lawsuit was filed in September 2016.[9] Plaintiff's broad allegation that the retaliatory nature of the search of his cell and other incidents is shown by "suspicious timing," without more, is insufficient to support a reasonable inference that these actions were taken "on account of the exercise of [his] constitutional rights" and that "'but for' the retaliatory motive" the incidents "would not have taken place." Compl. at 13; *Brown*, 234 F. App'x at 878 (internal quotation marks omitted); *see Leek v. Miller*, No. 16-3225, 2017 WL 2459812, at *2 (10th Cir. June 7, 2017) (affirming § 1915(e) dismissal of prisoner's retaliation claim where "the close temporal proximity of the transfers to the protected activity" was the "only allegation" supporting the claim). With respect to the chow-hall incident, Plaintiff admits that he was in fact attempting to take food out of the chow hall. *See* Compl. at 12. Plaintiff therefore has not pleaded that "but for" a desire to retaliate against Plaintiff for filing his lawsuit, Defendant Schmidt would not have stopped him and threatened disciplinary action. *Cf. Reed v. Bryant*, No. CIV-16-461-C, 2017 WL 1174023, at *8 (W.D. Okla. Feb. 6, 2017) (granting qualified immunity to prison official on retaliation claim where it was undisputed that the prisoner-plaintiff had committed the offense for which he received disciplinary action), *appeal docketed*, No. 17-6082 (10th Cir. Apr. 14, 2017). And as regards Defendant Bredel, Plaintiff has not alleged "specific facts" showing how Defendant Bredel's delay in processing a filing fee was "substantially motivated" by Plaintiff having filed a certain lawsuit. *Brown*, 234 F. App'x at 877; *Shero*,

---

[9] ODOC was the only named defendant in the initial complaint in Case Number CIV-16-654-HE, service of that pleading was not ordered until December 2016, and there is no indication on the docket that ODOC has ever been served in that lawsuit.

510 F.3d at 1203; *see* Compl. at 12 (alleging that "[m]any other JCCC inmates" had the same complaint). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

This claim should be dismissed in its entirety for failure to state a claim upon which relief can be granted.

### IV.    *Qualified Immunity*

Upon acceptance of the recommendations above, the sole remaining § 1983 claim is Plaintiff's Free Exercise Claim against Defendants Drawbridge, Reed, and Curry in their individual capacities. Defendants seek dismissal on the basis of the individual Defendants' qualified immunity. *See* Defs.' Mot. to Dismiss at 23-26. "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

"In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). In making this assessment, the Court must construe the complaint in the light most favorable to Plaintiff, accept all well-pleaded allegations as

true, and draw all reasonable inferences in Plaintiff's favor. *See Bella v. Chamberlain*, 24 F.3d 1251, 1254 (10th Cir. 1994).

In his Free Exercise Claim, Plaintiff alleges that the relevant Defendants have substantially burdened his exercise of his religion at JCCC by denying him certain diet items and religious accommodations. *See* Compl. at 7-11. As noted above, to state a free exercise claim, "a prisoner must allege that defendants substantially burdened his sincerely-held religious beliefs." *McKinley*, 493 F. App'x at 932 (internal quotation marks omitted). "And he must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* (internal quotation marks omitted). Further, the Court must assess, "as a general matter," whether Plaintiff has met his burden to "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Al-Owhali*, 687 F.3d at 1240 (internal quotation marks omitted).

The undersigned addresses each Defendant's entitlement to qualified immunity in turn, liberally construing Plaintiff's pleading but considering only those allegations actually directed toward these particular Defendants and supported by facts rather than mere conclusion. *See Vega v. Davis*, 572 F. App'x 611, 618 (10th Cir. 2014) (noting that when assessing whether defendant was entitled to qualified immunity on a motion to dismiss due to plaintiff's failure to show a constitutional violation, the "first step" is "to eliminate all 'allegations in the complaint that are not entitled to the assumption of truth'" (quoting *Iqbal*, 556 U.S. at 680); *Pahls*, 718 F.3d at 1225-26 ("When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice

showing that his rights 'were violated' will not suffice.  Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."); *cf. Guinn v. Jeffco Combined Courts*, 537 F. App'x 790, 791-94 (10th Cir. 2013) (affirming the district court's dismissal of plaintiff's complaint under Rule 8 where inmate named multiple defendants but failed to identify which defendant violated any specific right).

A. Defendant Curry

Plaintiff broadly claims that Defendant Curry, the JCCC Food Services Supervisor, denied Plaintiff his right to a diet consistent with his religious beliefs.  *See* Compl. at 8. The only explanation for how Defendant Curry specifically violated this right, however, is that: (1) "[o]n one occasion," Plaintiff was given a halal meal rather than a kosher meal and Defendant Curry said, "[T]ake it, or leave it."; and (2) and Defendant Curry failed "to provide a yeast-free environment for consuming Kosher for Passover meals."  *Id.* at 9, 21.

As to the first allegation, this single incident does not plausibly show that Plaintiff's sincerely held religious beliefs were substantially burdened through conscious or intentional disregard.  Rather, this incident, even liberally construed, reflects conduct that is merely an "isolated act[] of negligence" or a *de minimis* burden on Plaintiff's religious exercise.  *Gallagher*, 587 F.3d at 1070; *see McKinley*, 493 F. App'x at 933.  Therefore, the facts as alleged by Plaintiff do not "make out a violation of a constitutional right."  *Keith*, 707 F.3d at 1188 (internal quotation marks omitted).

Regarding the second allegation, Plaintiff offers no additional facts to support this "vague and confusing" assertion or to explain how and when this alleged denial transpired. *Burnett*, 706 F.3d at 1240.  Nor has Plaintiff met his burden to "plead facts from which a

plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Al-Owhali*, 687 F.3d at 1240 (internal quotation marks omitted). Plaintiff thus fails to state a plausible claim, fails to give Defendant Curry "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp.*, 550 U.S. at 544 (citing Fed. R. Civ. P. 8(a)(2)), and fails to "make out a violation of a constitutional right," *Keith*, 707 F.3d at 1188 (internal quotation marks omitted).

In addition, neither Plaintiff's allegations nor the undersigned's review shows that his right to a "yeast-free" area during Passover was "clearly established" at the time of Defendant Curry's alleged misconduct (i.e., sometime between April 2014 and September 2016, *see* Compl. at 6). *See Keith*, 707 F.3d at 1188.[10] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart*, 701 F.3d at 1330 (internal quotation marks omitted). "[A] case directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). For a right to be clearly established there must be either controlling authority (i.e., a Supreme Court or published Tenth Circuit decision) or "a robust consensus of cases of persuasive authority" from other courts that "ha[s] found the law to be as the plaintiff maintains." *al-Kidd*, 563 U.S. at 741-42 (internal quotation marks omitted); *Sanchez v. Labate*, 564 F. App'x 371, 373 (10th Cir.

---

[10] While the qualified-immunity briefing "was assuredly not robust," Defendants did therein present a defense that "necessarily included the clearly-established-law question." *Cox v. Glanz*, 800 F.3d 1231, 1244, 1245 (10th Cir. 2015) (emphasis omitted).

2014) (internal quotation marks omitted). "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Houston*, 132 S. Ct. 2088, 2094 (2012) (citations and internal quotation marks omitted).

Neither Plaintiff's allegations, nor the undersigned's own review, shows that clearly established law in April 2014 or thereafter would have been "reasonable warning" to an official in Defendant Curry's position that a failure to provide a yeast-free "environment" (as opposed to yeast-free meals) to Plaintiff during the Jewish Passover celebration "'violated [Plaintiff's] constitutional rights.'" *Stewart*, 701 F.3d at 1331 (quoting *United States v. Lanier*, 520 U.S. 259, 269 (1997)); *cf. Boles v. Dansdill*, 361 F. App'x 15, 19 (10th Cir. 2010) ("FCF was not required to serve Passover meals in multiple locations." (citing *Estate of Shabazz*, 482 U.S. at 348)); *Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir. 1993) (noting that providing a prisoner with a kosher diet, "even if the dining area is not kept kosher," might provide a reasonable alternative to the prison's existing policy); *Bouman v. Boone*, No. 3:13cv847 KS-MTP, 2015 WL 5604275, at *4, *6 (S.D. Miss. Sept. 23, 2015) (finding that prison's policy prohibiting inmates from consuming their ceremonial meals outside of the dining area was reasonably related to legitimate penological interests (citing *Jeans-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012) ("[P]rison officials have a rational interest in suspending inmates from the [religious-diet program] if they violate the program by removing food from the dining hall, as a security concern may be implicated by the potential for inmates to sell or barter their certified food[.]")).

Defendant Curry thus is entitled to qualified immunity on Plaintiff's Free Exercise Claim.

## B. Defendant Reed

Plaintiff alleges that Defendant Reed, the JCCC Commissary Supervisor, has refused to offer kosher grape juice at the commissary and thus has violated Plaintiff's "right to consume" this beverage "at Jewish services that normally call for it." Compl. at 7-8, 21. But there are no allegations establishing that Plaintiff ever requested of Defendant Reed that this item be sold or that Defendant Reed ever denied such a request or that Defendant Reed had the authority to decide whether kosher grape juice would be sold at the JCCC commissary. *See id.* Plaintiff therefore fails to show that Defendant Reed "conscious[ly]" or "intentional[ly]" interfered with his free exercise of religion, as required for the Court to reasonably infer liability and for Plaintiff to "make out a violation of" this constitutional right. *McKinley*, 493 F. App'x at 932; *Keith*, 707 F.3d at 1188 (internal quotation marks omitted); *see also Daniels*, 474 U.S. at 330 (noting that the plaintiff must establish that the defendant acted with the state of mind required for the underlying federal rights violation). "Factual allegations must be enough to raise a right to relief above the speculative level," and "the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Bell Atl. Corp.*, 550 U.S. at 555 (alterations, omissions, and internal quotation marks omitted). Defendant Reed is entitled to qualified immunity on this claim.

## C. Defendant Drawbridge

Plaintiff's allegations against Defendant Drawbridge, the JCCC Chaplain, are more

detailed. Plaintiff alleges that Defendant Drawbridge, for the purpose of discriminating against him, denied Plaintiff a diet consistent with his religious beliefs and has "consistently" denied Plaintiff's requests for accommodations—including numerous food items, lit candles, an appropriate water pitcher and blanket, and a Sukkah booth for Sukkot—for "various religious observances, including Rosh Hashanah, Yom Kippur, Passover, and Elul," Compl. at 6, 11, by, among other acts:

- denying Plaintiff a kosher diet for sixty days upon his transfer to JCCC "for no valid reason," despite Plaintiff submitting an emergency request and having been approved for kosher meals at his prior facility (*Id.* at 6, 8-9);

- pouring out kosher grape juice that was sent to Plaintiff by The Aleph Institute ("Aleph"), an outside nonprofit organization (*Id.* at 7-8, 9; Compl. Ex. 1 (Doc. No. 1-1) at 2; Compl. Ex. 12 (Doc. No. 1-12) at 1);

- issuing a memo directing that for the Fast of Tammuz in July 2016, Plaintiff was to receive a hot meal after 8:30 p.m., but intentionally failing to send this memo to Defendant Curry, so Plaintiff was given only a cold sack meal (Compl. at 10; Compl. Ex. 1, at 2; Compl. Ex. 16 (Doc. No. 1-16) at 1);

- denying Plaintiff's "duly submitted" advance written requests for accommodations regarding Orthodox Jewish observances at JCCC (Compl. at 11; Compl. Ex. 1-1, at 1-2; Compl. Ex. 4 (Doc. No. 1-4) at 1-4 (Defendant Drawbridge's denial of Plaintiff's proposal for observance of Rosh Hashanah on September 24, 2014); Compl. Ex. 9 (Doc. No. 1-9) at 1-3 (Plaintiff's February 2016 proposal regarding Passover observance in the JCCC visiting room, which Plaintiff alleges was "denied" by Defendant Drawbridge); Compl. Ex. 14 (Doc. No. 1-14) at 1-9 (Plaintiff's May 2016 proposal regarding Elul observance, which was denied by Defendant Drawbridge); Compl. Ex. 15 (Doc. No. 1-15) at 1-9 (Plaintiff's May 2016 proposal regarding Yom Kippur observance, which was denied by Defendant Drawbridge)); and

- "routinely" refusing to request food items from Aleph "even when they are offered free" and even though Defendant Drawbridge is aware, through the "many forms of communication" with the organization, "of the importance of inmates' having the use of items required for their observance of traditional Jewish rituals, services, and customs" (Compl. at 11; Compl. Ex. 1, at 1-2; Compl. Ex. 5 (Doc. No. 1-5) at 1-5 (advisory from Aleph to prison chaplains and institutional staff); Compl. Ex. 17

(Doc. No. 1-17) at 1-4 (letter from Aleph to Plaintiff saying they had "reached out" to Defendant Drawbridge). *But see* Compl. Ex. 10 (Doc. No. 1-10) at 1 (e-mail communication from Defendant Drawbridge to Aleph stating that a Passover food order had been placed on March 7, 2016)).

If considered separately, any of these alleged acts might be viewed as merely isolated negligence or a *de minimis* burden upon Plaintiff's free exercise rights. But taken collectively, assumed to be true, and construed in the light most favorable to Plaintiff, Plaintiff has pled facts from which it can be plausibly inferred that Defendant Drawbridge is liable for consciously or intentionally placing a substantial burden upon Plaintiff's sincerely held religious beliefs, particularly his right to a religious diet, and that this interference was "not reasonably related to a legitimate penological interest." *Al-Owhali*, 687 F.3d at 1240 (internal quotation marks omitted); *see McKinley*, 493 F. App'x at 933.

It follows that Defendant Drawbridge is not entitled to qualified immunity at this stage of proceedings. "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment," because "[a]t the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Thomas*, 765 F.3d at 1194 (omission in original) (alteration and internal quotation marks omitted). On a motion to dismiss, the court "do[es] not determine the merits of [a plaintiff's] claim that [the defendants'] conduct actually violated clearly established statutory or constitutional rights." *Hammett v. Okla. Dep't of Mental Health & Substance Abuse Servs.*, No. 97-6374, 1998 WL 427079, at *2 (10th Cir. July 21, 1998).

Although Plaintiff did not specifically controvert Defendants' assertion of qualified

immunity, Plaintiff's allegations plausibly show that Defendant Drawbridge actually violated a constitutional right. *See Keith*, 707 F.3d at 1188. And it was clearly established as of April 2014 that "prisoners have a constitutional right to a diet conforming to their religious beliefs," *Beerheide*, 286 F.3d at 1185, and to "a reasonable opportunity to pursue [their] religion," *Stewart*, 701 F.3d at 1330 (internal quotation marks omitted). *See* Compl. at 8 (citing *Beerheide*); *see also id.* at 7 (citing *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) (holding that a prisoner-plaintiff was entitled to First Amendment protection for his sincerely held religious belief that he required a vegetarian diet)), 8 (citing *Wares v. VanBebber*, 319 F. Supp. 2d 1237, 1245-50 (D. Kan. 2004) (denying qualified immunity to prison officials and holding, "[S]ince 1991, the Tenth Circuit has held that the First Amendment guarantees prisoners the right to reasonable dietary and meal accommodations that comport with their religious beliefs." (first citing *LaFevers*, 936 F.2d at 1119; then citing *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 n.4 (10th Cir. 1999)))); *Hammons v. Saffle*, 348 F.3d 1250, 1257 (10th Cir. 2003) (finding that "it was clearly established that [the prisoner] had the general right to the reasonable opportunity to exercise his religion"); *cf. Searles v. Bruce*, No. 01-3379-JTM, 2003 WL 23573643, at *3 (D, Kan. Oct. 20, 2003) (denying qualified immunity to prison officials alleged to have denied inmates Rosh Hashanah meals while in segregation).

This claim therefore should not be dismissed as to Defendant Drawbridge on the

basis of qualified immunity.[11]

### V. Plaintiff's Motions for Injunctive Relief

Plaintiff has filed a Motion for Injunctive Relief and a Petition for Emergency Injunction. Though entitled "Petition for Emergency Injunction," the Court evaluates that filing, as well as Plaintiff's Motion for Injunctive Relief, as motions for preliminary injunctions under Rule 65(a) of the Federal Rules of Civil Procedure.[12]

A preliminary injunction is an "extraordinary remedy" meant to preserve the relative positions of the parties until a trial on the merits of the plaintiff's claims can be held. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Univ. of Tex. v.*

---

[11] Adoption of this recommendation "does not foreclose [Defendant Drawbridge] from reasserting [his] entitlement to qualified immunity on a motion for summary judgment should [Plaintiff's] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (reversing a grant of qualified immunity on a motion to dismiss where it was "premature, absent a factual record"). The undersigned makes no finding or recommendation as to whether Defendant Drawbridge, at the appropriate stage, will be able to identify legitimate penological interests that justify the conduct impinging on plaintiff's religious beliefs" or to show entitlement to qualified immunity when Plaintiff "can no longer rest on the pleadings." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). *See generally* 2 *Moore's Federal Practice* § 12.34[4][b] (3d ed. 2017) (noting that ordinarily establishment of the defense of qualified immunity requires factual review and should not support dismissal for failure to state a claim).

[12] Plaintiff's Motions are properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b). "Rule 65(b) generally contemplates that a TRO would be issued only for a short term and 'without written or oral notice to the adverse party or its attorney.'" *Smith v. Jones*, No. CIV-12-1365-HE, 2014 WL 5448890, at *32 n.19 (W.D. Okla. Oct. 23, 2014) (quoting Fed. R. Civ. P. 65(b)), *aff'd*, 606 F. App'x 899 (10th Cir. 2015). Because Defendants here had both notice and an opportunity to respond to Plaintiff's motions, the Court should treat the motions as requests for preliminary injunction. *See id.* (citing cases).

*Camenisch*, 451 U.S. 390, 395 (1981). The party seeking a preliminary injunction generally must show: (1) a substantial likelihood that he or she will prevail on the merits; (2) he or she will suffer irreparable harm unless the injunction is issued; (3) that the potential harm from the threatened injury to the moving party outweighs the harm from the preliminary injunction to the nonmoving party; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). Issuance of a preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction. *Id.* at 1261; *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Here, Plaintiff seeks relief that is mandatory—the entry of either of Plaintiff's requested forms of relief would affirmatively require Defendants to act in a particular way and would place this Court in a position where it would be required to provide ongoing supervision. *See* Pl.'s Mot. at 1, 4; Pl.'s Pet. at 4; *Schrier*, 427 F.3d at 1261. Plaintiff therefore must meet a "heightened standard" on all four required elements. *See Little*, 607 F.3d at 1251. The preliminary injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *See Schrier*, 427 F.3d at 1259. Plaintiff further must make a "strong showing" both with regard to likelihood of success on the merits and with regard to the balance of harms in order to obtain this disfavored preliminary injunction. *Id.* at 1261.

A. Motion for Injunctive Relief

In his Motion for Injunctive Relief, Plaintiff alleges that, as retaliation for "this lawsuit and at least one other lawsuit recently filed against [her]," Defendant Arias-Vales "has increased the number of days when inmates cannot send out or receive legal mail." Pl.'s Mot. at 2. Plaintiff alleges that Defendant Bryant is aware of Defendant Arias-Vales' actions, *id*. at 3, and Plaintiff seeks an injunction requiring Defendants Bryant and Arias-Vales "to have the mailroom open and accessible to him and other inmates[] on all days which it is scheduled to be open and accessible." *Id*. at 1.

Plaintiff has not shown that he is entitled to preliminary injunctive relief against Defendants Bryant or Arias-Vales. Plaintiff has not shown that he is likely to suffer irreparable harm if the Court does not grant the requested injunction. *See Natural Res. Def. Council*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."). In his Motion for Injunctive Relief, Plaintiff contends that "during the previous year," Defendant Arias-Vales closed the JCCC mailroom "at least 2 of the 5 days of the week when it was scheduled to be open." Pl.'s Mot. at 2. Plaintiff's "penitentiary-specific" request for preliminary injunctive relief against Defendants Arias-Vales and Bryant almost certainly became moot when Plaintiff was transferred away from JCCC. *See Jordan*, 654 F.3d at 1027-28; note 1 *supra*. Even if that were not so, though Plaintiff asserts that "[n]ot being able to receive incoming legal mail can cause [him] an undue delay in meeting legal deadlines, or to miss those deadlines," Plaintiff does not establish how the cited actions have actually precluded him from timely filing or prosecuting this lawsuit, or

how they should be expected to likely cause irreparable injury in the future. Nor does Plaintiff establish that any harm he is suffering with respect to access to mailroom services would warrant this Court's intrusion into ODOC's management of JCCC. *See* 18 U.S.C. § 3626(a)(2).

B. Plaintiff's Petition for Emergency Injunction

In his Petition for Emergency Injunction, Plaintiff alleges that on December 11, 2016, Defendants Steinwand and Shelite "tortured plaintiff and tried to kill him." Pl.'s Pet. at 1. Plaintiff alleges that at approximately 12:30 a.m., his catheter became clogged, resulting in leaked urine, which medical personnel refused to examine, fix, or replace. *See id.* at 1-2. Plaintiff alleges that when he continued to leak urine, Defendants Steinwand and Shelite put him in an outside exercise area and left him "outside with no coat and with wet, urine soaked pants for 5 ½ hours [when] [i]t was about 35° and windy." *Id*. at 2-3. Plaintiff alleges that the actions of Defendants Steinwand and Shelite were "obvious retaliation due to this lawsuit in this case against Officers Steinwand and Shelite, and Warden Bryant." *Id.* at 3. He asks the Court to "immediately issue an order to JCCC Warden Jason Bryant . . . to take appropriate action to stop the torture and retaliation against him[.]" *Id.* at 4.

Plaintiff's allegations regarding the actions of Defendants Steinwand and Shelite do not support issuance of a preliminary injunction. Again, Plaintiff's allegations against these employees of JCCC were rendered moot by his transfer to another facility. *See Jordan*, 654 F.3d at 1027-29. Further, in his Petition for Emergency Injunction, Plaintiff contends that Defendants Steinwand and Shelite used excessive force against him in one

specific instance. But as Plaintiff is no longer housed at JCCC and no longer has contact with these Defendants, Plaintiff's allegations do not establish how Defendants Steinwand and Shelite are likely to cause him irreparable injury in the future if the Court does not grant the requested injunction. *See Natural Res. Def. Council*, 555 U.S. at 22.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court grant in part and deny in part Defendants' Motion to Dismiss (Doc. No. 44). Specifically:

- The RLUIPA Claim and all § 1983 claims should be dismissed on the basis of Eleventh Amendment immunity to the extent they are raised against ODOC and against the individual Defendants for monetary damages.

- All claims for declaratory and prospective injunctive relief against the individual Defendants in their official capacities should be dismissed.

- All remaining aspects of the RLUIPA Claim, the Eighth Amendment Claim, the Access to Courts Claim, the Due Process Claim, and the Retaliation Claim should be dismissed.

- The ADA Claim should remain pending against Defendant ODOC and otherwise dismissed.

- The Free Exercise Claim should be dismissed as to Defendants Bryant and Knutson in their individual capacities, and as to Defendants Curry and Reed in their individual capacities on the basis of qualified immunity, but should remain pending against Defendant Drawbridge in his individual capacity.

It is recommended that all dismissals be without prejudice.

It is further recommended that Plaintiff's Motion for Injunctive Relief (Doc. No. 13) and Petition for Emergency Injunction (Doc. No. 25), construed as motions for preliminary injunctive relief, be denied.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by September 29, 2017, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 8th day of September, 2017.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE